**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

J.S., a minor, by his Next Friend,
KATHARINE SMITH, and
KATHARINE SMITH,

      Plaintiffs,

v.

HOLLY AREA SCHOOLS, TONY
MAYHEW, and KENT BARNES,

      Defendants.
_____/

Case No. 09-14225
Hon. Gerald E. Rosen

**OPINION AND ORDER REGARDING**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____October 26, 2010_____

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Katharine Smith, individually and as next friend and mother of Plaintiff

J.S., a grade school student, commenced this action in this Court on October 28, 2009,

challenging the constitutionality of Defendant Holly Area Schools' policies regarding the

distribution of religious materials by students and parents.  The president of the Holly

School Board, Tony Mayhew, and the superintendent of the Holly Area Schools, Kent

Barnes, also have been named as Defendants.  Plaintiffs' claims rest principally upon

allegations that Defendants engaged in impermissible viewpoint discrimination by preventing Plaintiff J.S. and his mother from distributing invitations or flyers promoting religious activities at any time or in any place or manner during the school day.

Through the present motion, filed on March 22, 2010, Plaintiffs seek preliminary injunctive relief as to three aspects of the Defendant school district's policies regarding the distribution of materials. First, Plaintiffs request that Defendants be preliminarily enjoined from preventing J.S. from distributing religious flyers to fellow students during non-instructional time. Next, Plaintiffs seek an order granting Mrs. Smith access to a so-called "flyer forum," through which outside organizations submit flyers to the school for distribution to students. Finally, Plaintiffs request that the Court declare a Holly Area Schools policy, Policy 9370, unconstitutional on its face.

On July 30, 2010, the Court held a hearing on Plaintiffs' motion. As discussed below, it became evident from the parties' briefing on this motion, as well as through the statements of counsel at the July 30 hearing, that certain aspects of Plaintiffs' request for preliminary injunctive relief may have been mooted or otherwise affected by subsequent developments — including, most prominently, the Defendant school district's purported decision to close its "flyer forum." Accordingly, the Court held Plaintiffs' motion in abeyance, and invited the parties to negotiate an amicable resolution to their remaining disputes. The parties have since reported, however, that they were unable to resolve their differences, and they have submitted proposed findings of facts and conclusions of law as

to the matters that remain for the Court's determination.

Having reviewed the parties' briefs in support of and opposition to Plaintiffs' motion, as well as the parties' post-hearing submissions, the Court is now prepared to decide the aspects of Plaintiffs' motion that remain in dispute. This opinion sets forth the Court's rulings on these matters.

## II. FACTUAL BACKGROUND

### A. The Parties

At the time of the initial incidents giving rise to this suit, Plaintiff J.S. was a second grade student at Patterson Elementary School, a public school operated by the Defendant Holly Area Schools. Plaintiff Katharine Smith is J.S.'s mother. In the brief in support of their present motion, Plaintiffs describe themselves as "Bible-believing Christians who, pursuant to their sincerely held religious beliefs, desire to share their faith with Patterson students and their parents." (Plaintiffs' Motion, Br. in Support at 4.)

Apart from the Defendant school district, Plaintiffs have named two district officials as Defendants. First, Defendant Tony Mayhew is the president of the Defendant district's school board, and he has been named in his official capacity only. Next, Defendant Kent Barnes is the superintendent of the Defendant Holly Area Schools, and he has been named in both his official and individual capacities.

**B.      J.S.'s Attempt to Give Sealed Invitations to His Classmates**

The first incident giving rise to this suit occurred in June 2009, when Plaintiff J.S. brought 25 sealed envelopes to school and attempted to distribute them to his classmates. These sealed envelopes contained invitations to a youth summer camp held at Cornerstone Church, a church attended by Plaintiffs and located in Highland, Michigan. (*See* Plaintiffs' Motion, Ex. 3.)  Along with flyers that briefly summarized this summer camp, Mrs. Smith enclosed a letter to parents in each envelope in which she described the camp in greater detail, recounted how much her children had enjoyed the camp in the past, and invited parents to contact her for further information.  (*See id.*)[1]

J.S. gave one of these envelopes to a classmate in the school hallway before class began.  He then brought the remaining envelopes into his second grade classroom, and began placing them in "cubbyholes" that served as receptacles for distributing class and other materials to each student.  Upon learning of this and being advised by J.S. that the envelopes contained invitations to a church function, J.S.'s teacher, Ms. King, ordered the child to stop distributing the flyers, removed the envelopes J.S. had already placed into the student cubbyholes, and told J.S. to return these envelopes to his backpack.

---

[1]The exhibit that accompanies Plaintiffs' motion includes a copy of an envelope that bears the disclaimer, "This is a personal invitation . . . and is not endorsed or sponsored by Patterson Elementary or the Holly Area School district."  (*Id.*)  It appears from the record, however, that this disclaimer was not included on the envelopes that J.S. initially sought to distribute to his classmates in June of 2009.  Instead, Mrs. Smith evidently added this language when she contacted school officials later in the summer of 2009 to determine why her son had not been permitted to distribute the invitations back in June.

According to the complaint, Ms. King advised J.S. that "anything that comes from a church cannot be distributed at all at school."  (Complaint at ¶ 65.)

## C.    Mrs. Smith's Communications with School Officials

After this incident in June of 2009, Mrs. Smith called the school principal, Dennis Inhulsen, and provided him with a copy of the materials that her son had sought to distribute to his classmates.[2]  According to Mrs. Smith, the principal informed her "that J.S. could not hand out the invitation, or any other religious materials, in the hallways, cafeteria, or school grounds."  (Plaintiffs' Motion, Ex. 1, Katharine Smith Decl. at ¶ 9.)

During this discussion, Mr. Inhulsen described to Mrs.  Smith the school's usual procedure for allowing outside individuals or groups to distribute materials to schoolchildren.[3]  According to Mrs. Smith, Mr. Inhulsen advised her that such an outside group or individual must first seek approval from his office.  Once this approval was obtained, the materials would be forwarded to the teachers, who in turn would place the materials in the students' cubbyholes to be brought home at the end of the school day.[4]

_____

[2]As noted above, the copy of these materials provided by Mrs. Smith to the school principal evidently included a disclaimer that was not contained in the original materials that J.S. sought to distribute to his classmates.

[3]Plaintiffs characterize this as the "flyer forum," a term used in the case law to refer to the distribution of non-school-related materials to schoolchildren.

[4]Exhibit 2 to Plaintiffs' motion is a compilation of materials that were distributed through Patterson Elementary's "flyer forum" and brought home to Mrs. Smith.  These materials encompass such activities as Girl Scouts, gymnastics, karate, the 4-H Club, a crime prevention seminar conducted by the Holly Police Department, and summer camps conducted by a local parks and recreation department.

When Mrs. Smith asked the principal to approve the distribution of the invitation to her church's youth summer camp through this "flyer forum," Mr. Inhulsen responded that "this would not be possible because district policy prohibits the distribution of religious materials to students." (Katharine Smith Decl. at ¶ 13.)

Mrs. Smith continued to follow up on this matter in August of 2009, sending Mr. Inhulsen an e-mail in which she inquired whether either she or J.S. could distribute invitations at school during non-instructional time, or whether these invitations could somehow be distributed through the flyer forum. On August 25, 2009, the principal responded by e-mail, explaining that no such option was available:

> I am writing in response to your inquiry regarding the distribution of religious materials to children. It is my understanding of our board policy and school law that children or adults are not to distribute religious materials at school . . . . As an alternative to flyer distribution in classrooms we offer a central place for materials in our lobby area that adults can choose to read. We ask that a statement be placed reading "Not associated with Holly Area Schools" and that all materials must be reviewed through my office. We must make sure that materials are appropriate.

(Plaintiffs' Motion, Ex. 4, Inhulsen 8/24/2009 E-mail.)[5] Mr. Inhulsen closed his e-mail by assuring Mrs. Smith that "[a]ll of our policies are determined within legal limits and we use legal consultation in the process." (*Id.*)

---

[5]Plaintiffs dispute whether the flyer rack referenced in this e-mail is truly located in a "central place" in the school lobby. Rather, Mrs. Smith states that this rack is "easily[] overlooked" and "sits at the far end of the lobby," and that "[p]arents are not able to access the flyers on the rack without entering the school and walking to the end of the lobby which most parents do not do." (Katharine Smith Decl. at ¶ 16.)

In his e-mail to Mrs. Smith, Mr. Inhulsen stated that any further concerns should be addressed to the school superintendent, Defendant Kent Barnes, and the school board. In accordance with this direction, Mrs. Smith sent an e-mail to Mr. Barnes on August 25, 2009, suggesting various non-disruptive means through which her son could distribute invitations or religious flyers to his classmates either in or outside the classroom, and explaining that she was "in no way trying to interfere with the education of the students or trying to disrupt any instructional time." (Plaintiffs' Motion, Ex. 5, Katharine Smith 8/25/2009 E-mail.) The superintendent responded to Mrs. Smith in an e-mail sent the next day:

> While I understand that you are not wanting to disrupt the educational process, the fact remains that your child cannot distribute religious materials in the classroom. No other resolution exists. If he wants to verbally invite someone to your church or another activity during recess or on the bus, your child can do so. Please understand that classmates may not choose to listen to the invitation. If you wish to mail materials to other families, you most assuredly can do so. Distributing religious invitations/materials/explanations within the elementary school day is not appropriate. I contacted our legal firm as well to ensure my understanding is correct, and they agreed. It is not a matter of whether your child is standing or sitting in the classroom, hallway, or cafeteria. Simply stated, your request for your child to distribute religious materials/invitations to the classmates cannot be implemented.
>
> Please note that flyers can be put in the office as other flyers, not throughout the building.

(Plaintiffs' Motion, Ex. 6, Barnes 8/26/2009 E-mail.)[6]

---

[6]As noted above, the flyer rack mentioned in this e-mail is located in the school lobby, and not in the office.

In February of 2010 — after this suit was filed — the Patterson principal, Mr. Inhulsen, sent a letter home with each student advising parents that outside groups and individuals were no longer permitted to submit materials to the school for distribution to students.  This letter stated:

> This correspondence is clarification that our school district policy only allows school-related material to be sent home with students.  Birthday party invitations and other non school-related material may not be given to teachers for distribution or placed in student backpacks.
>
> Any and all requests to distribute information in the school must be made through the main office at Patterson.  We have a common area for distribution of community information that has been reviewed and approved by the office.

(Plaintiffs' Motion, Ex. 7, Inhulsen 2/11/2010 Letter.)

During the 2009-2010 school year, J.S. and his mother have wished to distribute materials to J.S.'s classmates concerning three events held at or sponsored by Cornerstone Church:  (i) an October 2009 "Harvest Party," an alternative to trick-or-treating; (ii) a "Power of One" Sunday event in April of 2010, with special services, music, and refreshments; and (iii) a youth summer camp held in June of 2010.[7]  As Plaintiffs understand it, however, the Defendant school district's policies prevent them from distributing invitations to these events to students at Patterson Elementary, whether via hand delivery by J.S. to his classmates or through the "flyer forum."

---

[7]Copies of the invitations Plaintiffs wished to distribute for the first two of these events are attached as exhibits 10 and 11 to their present motion.

**D.    The Defendant School District's Written Policies Governing Student Publications and the Distribution of Materials**

Apart from the above-cited statements of school policy by Patterson Elementary principal Inhulsen and superintendent Barnes, the Defendant school district has adopted written policies that arguably bear upon the incidents at issue here.  First, the district has a written policy regarding the distribution of student publications:

> Student publications which are not libelous, disruptive or obscene . . . may be distributed on school property during school hours in areas designated by the building principal.  Distribution which substantially interferes with the normal flow of traffic within the school corridors and entrance ways, which is coercive of any other person's right to accept or reject any publication or which causes substantial and material interference with "normal school activities" shall not be permitted.

(Plaintiffs' Motion, Ex. 8, Holly Area Schools Policy 8730.)

A related policy, Policy 8730-R, establishes procedures by which a student may seek the requisite approval of the school principal for distribution of a student publication and, if necessary, may appeal a principal's decision to the superintendent and the school board.  (*See* Plaintiffs' Motion, Ex. 8, Holly Area Schools Policy 8730-R.)  This policy affirms that "[s]tudents are protected in their exercise of freedom of expression by the First Amendment."  (*Id.* at 2.)  It further provides that "[d]istribution of student publications shall not be prohibited because they contain the expression of unpopular, critical, controversial, tasteless or offensive ideas."  (*Id.*)  This policy also defines various terms used in Policy 8730.  As pertinent here, it defines a "[s]tudent publication" as "any publication as defined herein which is composed, compiled, published or distributed by

9

students without school sponsorship." (*Id.* at 3.)

Finally, the Defendant school district has adopted a written policy governing the distribution of materials to students by outside groups or individuals:

> The board reserves the right to refuse distribution of any material by outside individuals or groups to the students of the district.

Special Interest Materials

> The **principal** of each building shall establish rules and regulations governing the distribution of special interest materials in the building.

Advertising in the Schools

> Except for distribution of information relative to Holly Area Schools or school issues, students and school buildings shall not be used as a means of disseminating advertising unless it involves an educational service approved by the board.

Use of Religious Materials

> The use of any religious materials may be used in the regular classroom to study the historical or cultural aspects of religion but such material is prohibited if used to indoctrinate the practice of a religion.

Dissemination of Religious Materials

> Materials that have a religious content may be made available to students during non-instructional time.  The district shall impose neutral[] time, place, and manner restrictions on the dissemination of religious materials to ensure that students are aware that the materials are not being endorsed or sponsored by the district.

(Plaintiffs' Motion, Ex. 9, Holly Area Schools Policy 9370.)

# III.  ANALYSIS

## A.      The Standards Governing Plaintiffs' Motion

Through the present motion, Plaintiffs seek a preliminary injunction that would (i) allow J.S. to distribute invitations to religious activities and religious flyers to his classmates at Patterson Elementary School during non-instructional time, (ii) enjoin the Defendant school district from denying Mrs. Smith access to the so-called "flyer forum," through which materials from outside groups or individuals are distributed to students, and (iii) declare Holly Area Schools Policy 9370 unconstitutional on its face.  Although Plaintiffs have advanced a number of distinct constitutional theories in their complaint — including claims under the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment — their present request for preliminary injunctive relief rests solely upon the theory that Defendants have abridged their First Amendment right to free speech by applying viewpoint-based criteria to suppress their attempts to communicate with Patterson Elementary students and their parents.

The decision whether to award preliminary injunctive relief is governed by a familiar four-part standard, under which the Court must consider (i) whether Plaintiffs, as the moving parties, have a strong likelihood of success on the merits, (ii) whether they would suffer irreparable injury in the absence of injunctive relief, (iii) whether an award of preliminary injunctive relief would cause substantial harm to others, and (iv) whether the public interest would be served by the requested award.  *Sandison v. Michigan High*

*School Athletic Association, Inc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). These four

considerations "are factors to be balanced and not prerequisites that must be satisfied,"

and "are not meant to be rigid and unbending requirements." *American Imaging Services,*

*Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Industries, Inc.),* 963 F.2d 855,

859 (6th Cir. 1992). "Moreover, a district court is not required to make specific findings

concerning each of the four factors . . . if fewer factors are dispositive of the issue."

*Jones v. City of Monroe,* 341 F.3d 474, 476 (6th Cir. 2003).

**B.      Likelihood of Success on the Merits**

As disclosed in the above recitation of facts, this case involves two different sorts

of efforts by Plaintiffs to inform Patterson Elementary School students and their parents

about activities at Plaintiffs' church. First, Plaintiff J.S. sought to distribute to his

classmates — either directly or through the use of cubbyholes in the classroom — sealed

envelopes in which he and his mother had placed flyers about upcoming events at

Plaintiffs' church and a letter from J.S.'s mother recommending these events. Next, upon

learning about the so-called "flyer forum" in a discussion with the Patterson principal,

Plaintiff Katharine Smith sought to use this mechanism to distribute flyers to students and

their parents advising them of upcoming activities at Plaintiffs' church. These two efforts

stand on somewhat different factual and legal footings, and will be addressed separately

below.

**1.      Plaintiffs Have Established a Likelihood of Success as to Their Claim
that J.S. Should Be Permitted to Distribute Invitations and Religious
Flyers to His Classmates, So Long as He Does So in a Manner That**

**Does Not Disrupt Normal School Activities.**

The Supreme Court long ago affirmed that students have First Amendment rights, and that they do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506, 89 S. Ct. 733, 736 (1969). Yet, "[i]t is also common ground . . . that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S. Ct. 2559, 2564 (1981). "The extent to which the government may regulate speech in a particular forum depends upon the nature of the forum." *M.A.L. v. Kinsland,* 543 F.3d 841, 846 (6th Cir. 2008).

As the Sixth Circuit has observed, "[r]epeated statements by the Supreme Court and multiple circuits, including this one, make it clear that school areas such as hallways constitute nonpublic forums." *M.A.L.,* 543 F.3d at 846. As a result, a school district "is entitled to put time, place, and manner restrictions on hallway speech so long as the restrictions are viewpoint neutral and reasonable in light of the school's interest in the effectiveness of the forum's intended purpose." *M.A.L.,* 543 F.3d at 847; *see also Tinker,* 393 U.S. at 513, 89 S. Ct. at 740 (allowing "reasonable regulation of [students'] speech-connected activities" by school officials so long as such regulation is "justified by a showing that the students' activities would materially and substantially disrupt the work and discipline of the school"); *cf. Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 684-85, 106 S. Ct. 3159, 3165 (1986) (recognizing a school district's authority to regulate

"vulgar and lewd speech"); *Morse v. Frederick,* 551 U.S. 393, 397, 127 S. Ct. 2618, 2622

(2007) (holding that "schools may take steps to safeguard those entrusted to their care

from speech that can reasonably be regarded as encouraging illegal drug use").

In *M.A.L.,* 543 F.3d at 843, the plaintiff was a 14-year-old eighth-grade student

who sought to distribute literature to his classmates "detailing various facts about

abortion." The defendant school district insisted that the plaintiff's leaflets had to be pre-

approved before he could distribute them, and it further determined that the student

should be limited to "post[ing] his leaflets on bulletin boards in the hallways and . . .

distribut[ing] them in the cafeteria during lunch." 543 F.3d at 844-45. The student

challenged these restrictions, citing *Tinker* for the proposition "that the school may only

regulate the time, place, and manner of his speech if his leaflet distribution [was] likely to

cause a material and substantial disruption." 543 F.3d at 845-46. The Sixth Circuit

disagreed, finding that the school district's "minor regulation" of the plaintiff's speech

was "eminently reasonable" because it restricted only the "time, place, and manner" of

this speech without regard for the student's "anti-abortion viewpoint." 543 F.3d at 847.

The court further held that it was reasonable for the defendant school district to require

pre-approval of the leaflets, so long as the district's guidelines for approval were

"viewpoint and content neutral" and "provide[d] clear standards against which the

principal must exercise his discretion to approve or disapprove of a proposed

distribution." 543 F.3d at 847-48.

In *Morgan v. Swanson,* 610 F.3d 877, 878-80, 889 (5th Cir. 2010), in contrast, the

Fifth Circuit held that the defendant school officials were not entitled to qualified immunity in a case in which elementary school students allegedly were prevented from distributing holiday "goodie bags" that contained pencils and other items with religious messages. In so ruling, the court rejected the defendants' contention that the First Amendment right of free speech did not extend to the "distribution of non-curricular materials in public elementary schools." *Morgan,* 610 F.3d at 884-89.[8] Rather, the court found it clearly established by "overwhelming precedent and persuasive authority" that "the suppression of student-to-student distribution of literature on the basis of religious viewpoint is unlawful under the First Amendment," even when this distribution is undertaken by elementary-age schoolchildren. 610 F.3d at 889; *see also Hedges v. Wauconda Community Unit School District No. 118,* 9 F.3d 1295, 1297 (7th Cir. 1993) (declaring unconstitutional a school policy regulating the distribution of materials that "lump[ed] religious speech with obscenity and libel for outright prohibition in the junior high school," and explaining that "no arm of government may discriminate against religious speech when speech on other subjects is permitted in the same place at the same time"); *M.B. v. Liverpool Central School District,* 487 F. Supp.2d 117, 127, 137 (N.D.N.Y. 2007) (holding that the defendant school district had violated a grade school student's First Amendment rights when it prohibited her from distributing a religious

---

[8]As discussed below, Defendants in this case similarly contend that the First Amendment free speech rights of grade school children are narrowly circumscribed to the point that they scarcely exist at all.

flyer to her classmates during non-instructional time "without a reasonable belief that it would cause substantial disruption").

Applying this case law here, Plaintiffs have established a likelihood of success on their First Amendment challenge to the Defendant school district's outright prohibition upon J.S.'s distribution of religious flyers to his classmates. The school district cannot reasonably be viewed as having imposed time, place, or manner restrictions upon J.S.'s distribution of these materials; instead, it has flatly forbidden him from giving such materials to his classmates anywhere on school grounds at any time during the school day. As explicitly stated by superintendent Kent Barnes in response to Mrs. Smith's inquiry, "[d]istributing religious invitations/materials/explanations within the elementary school day is not appropriate." (Plaintiffs' Motion, Ex. 6, Barnes 8/26/2009 E-mail.) Yet, as the above-cited decisions make clear, such a blanket prohibition upon a student's distribution of materials on the basis of religious viewpoint is not constitutionally permissible. *See M.A.L.*, 543 F.3d at 850 (emphasizing that "schools must meet a higher constitutional standard" — namely, the *Tinker* standard that requires a showing of a "'material and substantial interference' with the educational process" — "when they seek to foreclose particular viewpoints than when they seek merely to impose content-neutral and viewpoint-neutral regulations o[n] the time, place, and manner of student speech"); *Morgan,* 610 F.3d at 889 (noting that the defendant public school officials in that case could "point to no case stating that elementary school students are without protection under the First Amendment from religious-viewpoint discrimination, absent evidence of

disruption to the classroom or subversion of educational mission").

Defendants' efforts to avoid this result are unavailing. First, they contend that the district's policies governing the distribution of materials are being applied — at present, at least, if not in the past — in a viewpoint-neutral fashion to prohibit *all* distribution of flyers, whether religious or otherwise. Yet, while there is evidence in the record that the district has closed the so-called "flyer forum," through which outside groups or individuals distribute materials to students,[9] the record sheds considerably less light on the question whether the district now broadly forbids the students themselves from distributing any and all materials — including, for example, birthday party invitations — to their classmates anywhere on school grounds at any time during the school day, even if such distribution is limited to places outside the classroom and non-instructional times. The only record evidence bearing on this point is a February 11, 2010 letter from the Patterson principal, Dennis Inhulsen, advising parents that "[b]irthday party invitations and other non school-related materials may not be given to teachers for distribution or placed in student backpacks." (Plaintiffs' Motion, Ex. 7, Inhulsen 2/11/2010 Letter.) This letter seemingly does not preclude a student from directly handing a birthday party invitation to a classmate during non-instructional time.

At the July 30, 2010 hearing, however, defense counsel asserted that the Defendant school district has, in fact, imposed an across-the-board, viewpoint-neutral ban upon all

_____

[9]This matter is addressed below.

student-to-student distribution of materials on school grounds during school hours. (*See* 7/30/2010 Hearing Tr. at 14-17.) Yet, this solution to the viewpoint-discrimination problem triggers other First Amendment concerns. As Plaintiffs aptly observe, "[i]t is axiomatic that a complete ban on student speech is not a permissible 'time, place, and manner restriction.'" (Plaintiffs' Reply Br. at 9.) Likewise, the Supreme Court has emphasized that "we do not confine the permissible exercise of First Amendment rights to a telephone booth or the four corners of a pamphlet, or to supervised and ordained discussion in a school classroom." *Tinker,* 393 U.S. at 513, 89 S. Ct. at 740. Indeed, under the Defendant school district's own policy, "[s]tudent publications which are not libelous, disruptive or obscene . . . may be distributed on school property during school hours in areas designated by the building principal." (Plaintiffs' Motion, Ex. 8, Holly Area Schools Policy 8730.)[10] Thus, the Defendant district's across-the-board prohibition of all student-to-student distribution of materials during the school day cannot be justified as a reasonable time, place, and manner regulation of student speech. *See, e.g., Raker v. Frederick County Public Schools,* 470 F. Supp.2d 634, 638, 640-41 (W.D. Va. 2007) (finding that a public school policy that "virtually bans the circulation of all written

_____

[10]As noted earlier, the definition of a "student publication" as set forth in the district's policies plainly encompasses the flyer that J.S. sought to distribute to his classmates, as it includes "any publication . . . which is composed, compiled, published or distributed by students without school sponsorship." (Plaintiffs' Motion, Ex. 8, Holly Area Schools Policy 8730-R at 3.) Moreover, this policy defines "distribution" as "circulation or dissemination of the student publication to students ***at the time and place of normal school activity or immediately prior [or] subsequent thereto*** by means of handing out free copies . . . or displaying the material in areas of the school building or property which are generally frequented by students." (*Id.* (emphasis added).)

communication during the instructional day, including during lunchtime and between classes," could not be sustained as a reasonable time, place, and manner restriction); *Thompson v. Waynesboro Area School District,* 673 F. Supp. 1379, 1392 (M.D. Pa. 1987) (holding that "by restricting plaintiffs' distribution of religious literature to an area literally outside the 'schoolhouse gate,'" the defendant school district had "abridged plaintiffs' freedom of speech in violation of the first amendment").

Defendants next insist that student-to-student distribution of materials is not altogether prohibited, but is still achievable through the flyer rack located in the school lobby.  Under the present record, however, the Court agrees with Plaintiffs that this sharply circumscribed limit upon student-to-student speech is not "reasonable in light of the school's interest in the effectiveness of the forum's intended purpose," because it fails to provide students with a reasonable "opportunity to express [their] viewpoint to [their] fellow schoolmates."  *M.A.L.,* 543 F.3d at 847; *see also Phelps-Roper v. Strickland,* 539 F.3d 356, 373 (6th Cir. 2008) ("An alternative is not ample if the speaker is not permitted to reach the intended audience." (internal quotation marks and citation omitted)).  This flyer rack evidently is intended for adult and not student use, as it is located in an area of the school that students generally do not visit, and "[m]any students cannot reach the upper levels of the rack at all."  (Plaintiffs' Reply Br., Ex. 1, Katharine Smith Second Decl. at ¶¶ 10, 15.)  Indeed, in his August 25, 2009 e-mail to Mrs. Smith, principal Inhulsen described the flyer rack as "a central place for materials in our lobby area that adults can choose to read."  (Plaintiffs' Motion, Ex. 4, Inhulsen 8/25/2009 E-mail.)

Moreover, and as noted earlier, the Defendant district's policies governing student publications contemplate that "distribution" of such publications may be carried out "in areas of the school building or property which are generally frequented by students." (Plaintiffs' Motion, Ex. 8, Holly Area Schools Policy 8730-R at 3.)  So far as the present record reveals, then, there is no reasonable prospect that a student will be able to meaningfully communicate with his classmates through the flyer rack, and Defendants do not cite any evidence that suggests otherwise.

Finally, Defendants' efforts to identify case law that supports their viewpoint-based ban upon J.S.'s distribution of religious flyers are unavailing.  First, to the extent that Defendants suggest that *Tinker*'s recognition of the free speech rights of students may not extend to grade school children, the Fifth Circuit thoroughly addressed and rejected this proposition in its recent decision in *Morgan,* 610 F.3d at 886-89, and the Court finds this analysis persuasive.  Certainly, Defendants have not identified any case law support for this principle, apart from a misleading citation to the view of a single judge in *Muller v. Jefferson Lighthouse School,* 98 F.3d 1530, 1538-39 (7th Cir. 1996) (Manion, J.).[11]  Rather, the cases cited by Defendants stand only for the proposition that the speech of younger students may be subject to more stringent regulation.  *See, e.g., Walz v. Egg Harbor Township Board of Education,* 342 F.3d 271, 276 (3d Cir. 2003); *S.G. v. Sayreville Board of Education,* 333 F.3d 417, 423 (3d Cir. 2003); *Barber v.*

---

[11]Although Judge Manion authored the opinion of the court, his discussion of *Tinker*'s application to grade school children was not joined by either of the other judges on the panel.

*Dearborn Public Schools,* 286 F. Supp.2d 847, 855 (E.D. Mich. 2003). Other cases cited by Defendants are distinguishable as addressing restrictions upon student expression during instructional time or within the context of school-sponsored curricular activities, which raise concerns (not present here) of school sponsorship or endorsement of student speech. *See, e.g., Curry v. Hensiner,* 513 F.3d 570, 579 (6th Cir. 2008) (upholding a restriction upon a student's religious speech during a "curricular event").

In short, the decisions cited by Defendants do not support a public school's outright prohibition of student-to-student distribution of materials, even if this ban is viewpoint-neutral, and even if the ban is limited to elementary school students. Rather, any such viewpoint-neutral restriction upon student-to-student speech may regulate only the time, place, and manner of distribution. The policy put into place by the Defendant school district, which forbids student-to-student distribution of materials anywhere on school grounds at any point in the school day, does not qualify as such a reasonable and permissible time, place, and manner restriction. Accordingly, Plaintiffs have demonstrated a likelihood of success as to their claim of an abridgment of J.S.'s First Amendment right to free speech.

**2.      Plaintiffs Have Established a Likelihood of Success as to Their Claim That Mrs. Smith Is Being Denied Access to the So-Called "Flyer Forum" on Impermissible Viewpoint-Based Grounds, Where the Defendant School District Initially Closed All Outside Access to This Forum But Has Since Reopened It.**

Apart from the Defendant school district's ban upon Plaintiff J.S.'s distribution of religious materials to his classmates, the present motion also implicates Plaintiff

21

Katharine Smith's claim that the district has engaged in impermissible viewpoint discrimination by preventing her from communicating with other parents of Patterson Elementary School students about activities at her church. As discussed earlier, at times in the past, the school operated a so-called "flyer forum,"[12] through which outside groups and individuals could submit materials to the school and these materials, if approved, would be distributed to the students. Yet, when Mrs. Smith learned of this flyer forum and sought access to it, the Patterson Elementary principal, Dennis Inhulsen, advised her that "[i]t is my understanding of our board policy and school law that children or adults are not to distribute religious materials at school." (Plaintiffs' Motion, Ex. 4, Inhulsen 8/25/2009 E-mail.) Plaintiffs contend that this discrimination against religious viewpoints in gaining access to the flyer forum violates Mrs. Smith's First Amendment right to free speech.

Rather than defending this past practice, Defendants contend that they are permitted to close the flyer forum to *all* materials from outside groups or individuals, and they claim that they have elected to do precisely that. While it is open, the flyer forum is properly characterized as a limited public forum — that is, a channel of communication opened by the school district for the limited purpose of permitting outside groups or individuals to distribute approved materials to students. *See Perry Education Ass'n v.*

_____

[12]As noted earlier, the policies of the Defendant school district do not refer to a "flyer forum." Rather, this is Plaintiffs' characterization of the district practice at issue, derived from case law addressing similar distributions of materials by outside, non-school-related groups to students. For purposes of this opinion, the Court adopts this characterization.

*Perry Local Educators' Ass'n,* 460 U.S. 37, 45-46 & n.7, 103 S. Ct. 948, 955 & n.7 (1983) (describing the characteristics of a limited public forum); *Hills v. Scottsdale Unified School District,* 329 F.3d 1044, 1049-50 (9th Cir. 2003) (determining that a flyer forum similar to the one at issue here was a limited public forum). Yet, as Defendants point out, the case law recognizes the government's authority to close a limited public forum it has previously opened. *See, e.g., Perry Education Ass'n,* 460 U.S. at 45-46, 103 S. Ct. at 955 (observing that "a State is not required to indefinitely retain the open character of" a limited public forum); *Kincaid v. Gibson,* 236 F.3d 342, 348 (6th Cir. 2001); *DiLoreto v. Downey Unified School District Board of Education,* 196 F.3d 958, 970 (9th Cir. 1999).

*DiLoreto,* like this case, concerned a school district's decision to deny access to a limited public forum by an individual who wished to communicate a religious message. In that case, the defendant school district permitted advertisements for local businesses to be posted on the fence of a high school baseball field. The plaintiff sought to post an advertisement containing the text of the Ten Commandments, but the school district refused to permit the advertisement to be displayed. Some time later, the school district decided to discontinue its program altogether and remove all of the advertisements that had been posted on the fence. Although the bulk of the Ninth Circuit's decision concerned the district's initial refusal to display the plaintiff's advertisement with its religious message, the court addressed the discontinuation of the advertising program at the conclusion of its opinion, holding that "[c]losing the forum is a constitutionally

permissible solution to the dilemma caused by concerns about providing equal access while avoiding the appearance of government endorsement of religion." *DiLoreto,* 196 F.3d at 970.[13]

Likewise, in this case, Defendants could permissibly have avoided any further viewpoint-discrimination concerns by discontinuing the school district's program of allowing outside individuals and groups to distribute pre-approved materials to students, and Plaintiffs do not contend otherwise. It further appears undisputed that, as of the July 30, 2010 hearing on Plaintiffs' motion, the Defendant school district had, in fact, closed its flyer forum. In his February 11, 2010 letter to parents, for example, principal Inhulsen stated that "our school district policy only allows school-related material to be sent home with students." (Plaintiffs' Motion, Ex. 7, Inhulsen 2/11/2010 Letter.)[14] Similarly,

---

[13]As alluded to in this passage from *DiLoreto,* the communication of religious messages through a limited public forum created by the government may raise concerns under the First Amendment's Establishment Clause, to the extent that a reasonable observer might interpret the government's action as an endorsement of such messages. *See Rusk v. Crestview Local School District,* 379 F.3d 418, 420-21 (6th Cir. 2004). In this case, Plaintiffs have asserted claims under the Establishment Clause, and Defendants have defended certain of their actions as intended to avoid running afoul of the Establishment Clause. These Establishment Clause issues need not be addressed at present, however, where Plaintiffs' request for preliminary injunctive relief does not rest upon their Establishment Clause claims, and where Defendants do not contend that the actions at issue in Plaintiffs' motion are justifiable as an effort to avoid an Establishment Clause violation. In particular, there is no basis in the record for concluding that J.S.'s attempts to hand-deliver religious flyers to his classmates or Mrs. Smith's efforts to distribute these flyers through the flyer forum would have been interpreted by the recipients of these flyers as the Defendant school district's endorsement of any religious message contained in the flyers. *See Rusk,* 379 F.3d at 420-24 (finding no Establishment Clause violation in the defendant school district's decision to include within its flyer forum materials that advertised religious activities).

[14]In a supplemental declaration dated May 19, 2010, Katharine Smith appears to raise a question whether the flyer forum was fully closed. In particular, she cites an instance in April of 2010 in which J.S.'s teacher gave the students a pamphlet entitled "As the World Warms" to take

defense counsel represented at the July 30 hearing that this forum had been closed, and Plaintiffs' counsel accepted this fact for purposes of the arguments presented at the hearing. (*See* 7/30/2010 Hearing Tr. at 6-7.) At the time of the hearing, then, there was no active flyer forum that could have been the appropriate subject of preliminary injunctive relief.[15]

In light of more recent developments, however, it can no longer be said that Plaintiffs' request for preliminary injunctive relief is moot. Specifically, in a supplemental declaration filed on October 18, 2010, Mrs. Smith states that since the beginning of the 2010-11 school year, flyers from outside groups — including

_____

home in their backpacks. This pamphlet was produced by a local newspaper, the Oakland Press, and its last page consists of an advertisement from a local credit union encouraging children to open savings account and to take advantage of other services targeted at children. Moreover, Mrs. Smith characterizes this pamphlet in general as "basically a piece of propaganda advocating the belief that mankind is causing out-of-control global warming and encouraging the students to take drastic action to stop it." (Smith 5/19/2010 Decl. at ¶ 2.) According to Mrs. Smith, this pamphlet was not discussed during class time, was not related to any classroom activities, was not referenced by any of J.S.'s teachers, and was not given as an assignment for J.S. to complete. (*See id.* at ¶ 4.)

It certainly is open to question whether the distribution of this pamphlet to students comports with the school district's claim that, under current policy, only school-related materials will be sent home with students. Yet, whether or not J.S.'s teacher exercised sound judgment or acted in accordance with district policy in sending this pamphlet home with the students, it nonetheless appears to be the case that a school employee, and not an outside group or individual, initiated the distribution of this pamphlet to students. It seems doubtful that this isolated action taken by a school employee could be construed as a school district decision to reopen the flyer forum for distribution of non-school-related materials to students.

[15]To be sure, and as Plaintiffs correctly observe, even if the Defendant school district closed the flyer forum going forward, this would not defeat Plaintiffs' claims based upon the district's past, allegedly viewpoint-based denials of Mrs. Smith's requests for access to this forum while it remained open.

advertisements for a volleyball clinic, a basketball league, Lego classes, the Davisburg

Heritage Festival, and community-wide Halloween-related activities — have been sent

home with Patterson Elementary students, including her kindergartner.  (*See* Smith

10/18/2010 Decl. at ¶¶ 7-9.)  Consequently, the Defendant school district's principal

defense to this claim for injunctive relief — namely, that there is no longer a "flyer

forum" in existence for the distribution of non-school-related materials from outside

groups or individuals to Patterson students and their parents — is no longer viable.

Moreover, if the flyer forum has been reopened — as appears to be the case from Mrs.

Smith's recent submission — the Defendant district cannot permissibly deny Mrs. Smith

access to this forum on the sole ground that she seeks to distribute materials promoting

religious activities.  *See, e.g., Hills,* 329 F.3d at 1050-53 (finding that the defendant

school district in that case had engaged in impermissible viewpoint discrimination by

refusing to permit the distribution of brochures for a religious youth summer camp

through the district's flyer forum).  In light of the reopening of this forum, then, Plaintiffs

have demonstrated a likelihood of success on their claim that Mrs. Smith is being denied

access to this forum on impermissible, viewpoint-based grounds.[16]

---

[16]As noted earlier, the third item of relief sought in Plaintiffs' present motion is an injunction against the application of the Defendant school district's Policy 9370, on the ground that this policy grants unbridled discretion to district officials and thus is facially unconstitutional.  Yet, there is no indication in the record that Defendants actually invoked this policy as a basis for denying Mrs. Smith's request for access to the flyer forum.  Rather, when principal Inhulsen and superintendent Barnes informed Mrs. Smith that she would not be permitted to submit religious materials for distribution to Patterson students and their parents, these school officials cited their understanding of the law, as opposed to Policy 9370, as the ground for their decisions.  Indeed, as Plaintiffs point out, Policy 9370, if applied here,

## C.     Irreparable Injury

The remaining three prongs of the standard for determining whether to award preliminary injunctive relief require little further discussion.  First, the Supreme Court has recognized that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns,* 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976); *see also Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville & Davidson County,* 274 F.3d 377, 400 (6th Cir. 2001).  In this case, Plaintiff J.S. has been denied the opportunity to distribute invitations to his classmates for various events at his church, including the 2009 and 2010 youth summer camps, the harvest party in October of 2009, and the "Power of One" event in April of 2010.  For her part, Mrs. Smith has been denied access to the Defendant school district's

---

seemingly would have permitted Mrs. Smith to distribute religious materials through the flyer forum, as it authorizes such materials to be "made available to students during non-instructional time" in accordance with "neutral[] time, place, and manner restrictions."  (Plaintiffs' Motion, Ex. 9, Holly Area Schools Policy 9370.)

Under these circumstances, the Court declines to address the constitutionality of Policy 9370 (whether facially or as applied) at the present juncture.  As the result of the Court's rulings on Plaintiffs' motion, J.S. will be permitted to distribute invitations to church events to his classmates, subject to reasonable time, place, and manner restrictions, and Mrs. Smith likewise will be permitted to submit materials for distribution through the school district's flyer forum.  If district officials proceed to invoke Policy 9370 as a basis for denying Mrs. Smith's request that particular materials be distributed through the flyer forum, Plaintiffs may then return to the Court and challenge this application of the policy.  In the meantime, however, the Court sees no immediate need to consider the constitutionality of this policy, where it arguably has not yet been applied in a manner that has caused Plaintiffs any injury, and where Plaintiffs' facial challenge to this policy is better resolved under a complete evidentiary record as part of the overall consideration and disposition of Plaintiffs' claims on the merits, rather than under the limited record that exists at this preliminary stage of the proceedings.

flyer forum, through which she could have informed Patterson students and their parents about upcoming activities at her church.  As explained above, the present record indicates that each of these denials resulted in an abridgment of Plaintiffs' First Amendment right to free speech.  This suffices to show irreparable injury in the absence of an award of preliminary injunctive relief.

**D.     Substantial Harm to Others**

As Plaintiffs observe, given that they have established a strong likelihood of success on their claims of abridgements of their right to free speech, there can be no serious claim that Defendants or others will suffer substantial harm from a preliminary injunction protecting against further infringements of this First Amendment right.  *See Deja Vu,* 274 F.3d at 400 ("[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment.").  Defendants' only response on this point is that discord might result if Plaintiffs are permitted to distribute religious flyers to students, where parents evidently have "approached the District and threatened to sue the District if religious materials are passed out to their grade-school children."  (Defendants' Response Br. at 21.)  Yet, as Plaintiffs point out, if Defendants are preliminarily enjoined from infringing their First Amendment right to distribute religious materials to Patterson students and their parents, whether through non-disruptive student-to-student delivery or through submission to the flyer forum, "following the law brings no legal harm to Defendants," (Plaintiffs' Reply

Br. at 14), and nothing in this injunctive relief would threaten to transgress the First Amendment rights of others. This is particularly so where the Defendant district retains the right to grant prior approval before any materials submitted by Plaintiffs may be distributed to Patterson students and their parents. *See M.A.L.,* 543 F.3d at 847-48.

**E.    The Public Interest**

The Sixth Circuit has recognized that "it is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu,* 274 F.3d at 400 (internal quotation marks and citation omitted). Again, because Plaintiffs have established a strong likelihood of success on their claims (i) that the Defendant district's ban on student-to-student distribution of materials violates J.S.'s First Amendment right of free speech, and (ii) that Mrs. Smith is entitled to viewpoint-neutral access to the flyer forum, it is in the public interest to enjoin any further such violations of Plaintiffs' First Amendment rights.

**IV.  <u>CONCLUSION</u>**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' March 22, 2010 motion for preliminary injunction (docket #11) is GRANTED IN PART, in accordance with the rulings in this opinion and order. IT IS FURTHER ORDERED that counsel for the parties shall promptly meet and confer in an effort to agree upon the language and terms of an appropriate order awarding the preliminary injunctive relief granted in the present ruling. IT IS FURTHER ORDERED that, within ***ten (10) days*** of the date of this opinion and order, the parties shall submit for the Court's consideration and review an

agreed-upon proposed order awarding preliminary injunctive relief.

In the event that the parties are unable to agree upon the language of a proposed order, IT IS ORDERED that, within ***ten (10) days*** of the date of this opinion and order, Plaintiffs shall submit to the Court and serve upon Defendants a proposed order reflecting their views as to the appropriate terms and scope of an award of preliminary injunctive relief. Defendants shall then have ***seven (7) days*** from the date of Plaintiffs' service of their proposed order to lodge any objections to this submission. Upon review of Plaintiffs' proposed order and Defendants' objections, the Court will enter an appropriate order awarding preliminary injunctive relief in accordance with the rulings in the present opinion and order.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: October 26, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 26, 2010, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager